IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMSTRONG COUNTY MEMORIAL HOSPITAL,<br>                 Plaintiff,<br><br>        v<br><br>UNITED STEEL PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION AND ITS LOCAL UNION 158-06,<br><br>                 Defendants. | )<br>)<br>)<br>) 2:09-cv-1551<br>)<br>)<br>)<br>)<br>)<br> |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court are the DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 12) filed by the Union and the MOTION FOR SUMMARY JUDGMENT (Document No. 14) filed by Plaintiff Armstrong County Memorial Hospital (the "Hospital"). The cross-motions have been thoroughly briefed (Document Nos. 13, 16, 19, 20) and the parties have submitted a Joint Appendix containing the relevant exhibits, for which the Court is deeply appreciative. The motions are ripe for disposition.

Factual and Procedural Background

This case arose from the Hospital's efforts to become a "Tobacco Free Campus." In 1992, the Hospital implemented a "no smoking" policy within its buildings, except for the psychiatric unit, which policy remained in effect for the next sixteen years. Under the policy, employees were permitted to smoke outside the buildings in designated smoking areas, including a "butt hut," and in their personal vehicles while on Hospital property. Over time, enforcement of the designated smoking areas became lax, and the Hospital received complaints about

cigarette smoke blowing into patients' rooms.

Accordingly, in November 2008, the Hospital informed the Union of its intent to ban smoking entirely on all of its property by means of a "Tobacco Free Campus" policy, effective January 1, 2009. At no point did the Hospital attempt to negotiate a change to the existing practice with the Union. On November 12, 2008, the Union filed a grievance, No. 2008-81. On November 26, 2008, the parties met to discuss the policy change but did not resolve the grievance. The Hospital implemented the "Tobacco Free Campus" policy as scheduled, and the Union submitted the grievance to arbitration.

The Hospital and Union are parties to a collective bargaining agreement ("CBA") which was executed on June 23, 2008. As relevant to this case, the CBA provides as follows:

ARTICLE 4 --  MANAGEMENT RIGHTS

4.01  The functions and responsibilities of Management are retained and vested exclusively in the Employer. The rights reserved in the Employer include all matters of inherent managerial policy plus those necessitated by the unique nature of the Employer's operations. In the exercise of these rights, the Employer agrees that it will not violate the specific provisions of this Agreement.

4.02  The Employer reserves the right to establish, revise and administer reasonable policies and procedures, . . . to control and regulate the use of facilities, supplies, equipment, and other property of the Employer; . . . to make or change reasonable Employer rules, regulations, policies and practices, provided the Employer gives advance notice to the Union; . . . to establish or change standards; . . . and otherwise to help the Employer attain and maintain full operating efficiency and effectiveness of the Hospital to ensure that the parties promote the highest quality patient care and treatment possible.

4.05  The management rights set forth in this Article are by way of example and not by way of limitation and specifically are not limited by existing or "prior practices" or "side agreements" which existed prior to this Agreement and are not incorporated herein.

23.01  The Employer will make every effort to maintain its facilities and equipment in such physical condition so as to provide a safe and healthy work environment . . . .

The CBA established a grievance procedure, to be followed by arbitration, with the arbitrator's

decision to be "final and binding upon both parties." On the other hand, in Article 14.04, the CBA states: "The arbitrator shall have no power to add to, subtract from, or modify any provision of this Agreement."

Arbitrator William J. Miller, Jr. was selected by the parties. He conducted a hearing in September 2009 and issued a 21-page Opinion and Award on October 22, 2009 (the "Arbitration Award"). In the "considered opinion" of the arbitrator, a "past practice" had been established "regarding employees having a designated location to smoke." Award at 20. The Arbitrator then reasoned: "The employees had come to expect they would have a specific location to smoke, and in my considered opinion, this expectation rose to the level of a protected local working condition." *Id.* The Arbitrator recognized that the Hospital had authority to unilaterally implement certain policies, and that the "Tobacco Free Campus" policy was well-meaning. Nevertheless, the Arbitrator concluded that the Tobacco Free Campus was unreasonable. As he explained: "The problem with the policy is that it fails to make a reasonable accommodation for employees who previously had a designated location to smoke." *Id*. at 21.

Upon receipt of the Arbitration Award, the Hospital commenced this lawsuit. It asks the Court to vacate the Award pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 10. The Union's answer, counterclaim and cross-motion seeks to enforce the Arbitration Award.

Standard of Review

This Court will apply the deferential standard of review set forth in *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237 (3d Cir. 2005), which is cited by both parties and arose under similar procedural circumstances. In *Brentwood*, as here, an

employer filed an LMRA complaint to vacate an arbitration award that had sustained an employee grievance under a CBA.  The Court of Appeals explained the appropriate analysis:

> A collective bargaining agreement represents a contractual accord reached between an employer and its employees. If such a contract includes an arbitration clause, it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement. It is thus not the role of a court to correct factual or legal errors made by an arbitrator. A district court may determine only whether or not an arbitrator's award "draws its essence" from the parties' collective bargaining agreement, and we apply this same standard in reviewing the arbitration award. Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.
>
> An award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.  As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction. Therefore, we will not disturb an arbitration award even if we find the basis for it to be ambiguous or disagree with the arbitrator's conclusions under the law.

*Id*. at 240-41 (citations and internal punctuation omitted).  The *Brentwood* Court also emphasized the "strong presumption" under the Federal Arbitration Act in favor of enforcing arbitration awards such that Courts should interfere only if an award is "severely problematic." *Id.* at 239.  Nevertheless, courts should not simply "rubber stamp" arbitration decisions. *Citgo Asphalt Refining Co. v. Paper, Allied-Indus.*, 385 F.3d 809, 816 (3d Cir. 2004).

Legal Analysis

The Hospital asks this Court to vacate the Arbitration Award.  The Hospital raises three contentions: (1) that the Award violates public policy – namely, efforts to restrict smoking at hospitals; (2) that the Award does not "draw its essence" from the CBA, but directly conflicts

with the provisions regarding management rights; and (3) that the Award exceeded the arbitrator's jurisdiction.

The Union asks this Court to affirm the Arbitration Award. The Union emphasizes the deferential nature of this Court's review of the arbitrator's decision, as discussed above. On the merits, the Union contends that no public policy is violated by providing employees with a designated smoking area. Additionally, the Union argues that the arbitrator, consistent with his authority to interpret Article 4 of the CBA, correctly considered past practices in order to construe the ambiguous contractual language regarding the Hospital's ability to implement "reasonable" smoking policies.

The Court is not fully persuaded by the Hospital's "public policy" or jurisdictional arguments, but need not reach a final determination on those grounds. Instead, the Court agrees with the Hospital that the Arbitration Award does not "draw its essence" from the language of the CBA.

The arbitrator, to his professional credit, clearly explained the rationale for his decision. He first determined: "The employees had come to expect they would have a specific location to smoke, and in my considered opinion, this expectation rose to the level of a protected local working condition." Award at 20. He then held that the "problem" with the Tobacco Free Campus policy was that the Hospital failed to accommodate the employees' expectations regarding their previously designated smoking location. Award at 21. In sum, the arbitrator concluded that employee expectations, based on past practice, rose to a protected interest that must be accommodated by the Hospital.

However, this rationale, regardless of its apparent fairness and wisdom, cannot be reconciled with the actual language of the CBA, even under the most deferential standard of

5

review. In Section 4.01, the Hospital and Union agreed upon a comprehensive "management rights" provision, by which the Hospital retained exclusive authority to execute "all matters of inherent managerial policy plus those necessitated by the unique nature of the Employer's operations." In Section 4.02, the parties agreed that the Hospital reserved the rights, inter alia, "to establish, revise and administer reasonable policies and procedures, . . . to control and regulate the use of facilities, [ ] and other property of the Employer; . . . to make or change reasonable Employer rules, regulations, policies and practices, provided the Employer gives advance notice to the Union; [and] . . . to establish or change standards." The Tobacco Free Campus policy falls comfortably within the parameters of these specifically retained management rights.

The fundamental error in the Arbitration Award is the determination that the employees' expectations regarding past smoking practices were protected. Section 4.05 of the CBA, in plain and direct language, explicitly provided that management prerogatives could ***not*** be limited by such past practices:

> 4.05   The management rights set forth in this Article are by way of example and not by way of limitation and **specifically are not limited by existing or "prior practices"** or "side agreements" which existed prior to this Agreement and are not incorporated herein. (Emphasis added)

The arbitrator did not attempt to parse or apply this language. Although Section 4.02 was quoted and discussed in the Arbitration Award, Section 4.05 was ignored in its entirety.[1] Thus, the arbitrator based his "considered opinion" on a ground that is specifically barred by the CBA.

---

[1] It is noteworthy that the Union's memoranda of law in this case similarly fail to discuss, distinguish, or even to recognize the existence of Section 4.05 of the CBA. The contractual language regarding "prior practices" is so clear, and so directly on-point, that the omission speaks volumes. There is no effective counter-argument.

This is the essence of "manifest disregard" of the contractual language.  *See, e.g., Citgo Asphalt*, 385 F.3d at 809 (vacating arbitration award where arbitrator imposed his view of fairness, as opposed to the terms of the "management rights" provisions in the CBA).  Pursuant to Section 4.05, employee expectations regarding prior practices cannot become "protected local working conditions."

      The Court recognizes the care and professionalism with which the arbitrator undertook this assignment and articulated the reasons for his decision in the Arbitration Award.  The Court also appreciates the wisdom of the arbitrator's proposed solution.  Indeed, it certainly may have been more prudent, respectful, efficient and cost-effective for the Hospital to have solicited greater input from the Union regarding the Tobacco Free Campus policy.  Nevertheless, the CBA provides the Hospital with the right to make and revise such policies regardless of employee expectations based on prior practices.  Accordingly, although the role of the reviewing court is narrow and deferential, this Arbitration Award does not "draw its essence" from the CBA and must be vacated.

      An appropriate Order follows.

                                                  McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARMSTRONG COUNTY MEMORIAL )
HOSPITAL, )
         **Plaintiff,** )
) 2:09-cv-1551
         v )
UNITED STEEL PAPER AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
WORKERS INTERNATIONAL UNION AND ITS
LOCAL UNION 158-06,

         **Defendants.**

### ORDER OF COURT

AND NOW this 4th day of May, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 12) filed by the Union is **DENIED** and the MOTION FOR SUMMARY JUDGMENT (Document No. 14) filed by the Hospital is **GRANTED**. The Arbitration Award dated October 22, 2009 in Grievance No. 2008-81 is hereby **VACATED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:    Ronald J. Andrykovitch, Esquire
        Email: randrykovitch@cohenlaw.com

        Amanda Green, Esquire
        Email: agreen@usw.org